**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| AMERICAN PATENTS LLC,<br><br>    Plaintiff,<br><br>      v.<br><br>ZTE CORP., et al.,<br><br>    Defendants. | CIVIL ACTION NO. 4:18-cv-675-ALM<br><br><br><br>JURY TRIAL DEMANDED |

**<u>AMERICAN PATENTS' OPPOSITION TO ZTE CORPORATION'S
SPECIAL LIMITED APPEARANCE, MOTION TO SET ASIDE CLERK'S DEFAULT,
AND MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................ 3

II.  BACKGROUND ................................................................................................ 4

    A.  ZTE Corp. Is Doing Business In Texas ................................................ 4

    B.  American Patents Files Its Complaint Against the ZTE Defendants and Effects Substitute Service on the Secretary of State of Texas ........................................... 6

    C.  ZTE Corp.'s Counsel Immediately Initiates an Ongoing Dialog With American Patents' Counsel ................................................................................ 6

    D.  ZTE Corp. Elects Not to Respond to the Complaint Before the Deadline ............ 7

III.  ARGUMENT ................................................................................................ 8

    A.  ZTE Corp.'s "Special Limited Appearance" Has No Legal Significance .............. 8

    B.  American Patents Is Willing to Agree to Lift the Default *if* ZTE Corp. Agrees to Participate on the Merits; Otherwise, There Is No Good Cause for Lifting the Entry of Default ................................................................................ 8

    C.  Substituted Service on the Texas Secretary of State Constituted Proper Service on ZTE Corp. ................................................................................ 11

        1.  Texas Law Provides For Substitute Service In The Circumstances Here  11

        2.  In the Alternative, American Patents Requests that the Court Permit Service by Alternate Means and/or Discovery Concerning ZTE Corp.'s Relationships with Its U.S. Subsidiaries ................................................ 15

    D.  The Complaint States a Claim for Infringement Against ZTE Corp. ................... 16

        1.  ZTE Corp.'s Factual Denials Are Irrelevant to Its Rule 12(b)(6) Motion to Dismiss ................................................................................ 17

        2.  The Complaint Properly Alleges Infringement by ZTE Corp. ................. 17

IV.  CONCLUSION ................................................................................................ 23

# I.     INTRODUCTION

Despite its counsel's prior appearance in this case for another ZTE affiliate, ZTE

Corporation willfully failed to respond to American Patents' complaint before its deadline,

resulting in entry of default against it.  Apparently having reevaluated the wisdom of that tactic,

ZTE Corp. now moves to set aside the entry of default and to dismiss the complaint.  But its

motion presents a posture rarely seen in federal court: it is made subject to ZTE Corp.'s "special

limited appearance."  Of course, since the Federal Rules of Civil Procedure were enacted eighty

years ago "it is no longer necessary to appear specially or employ any particular set of words to

challenge a federal court's personal jurisdiction, venue, or service of process."  Wright & Miller,

5B Fed. Prac. & Proc. Civ. § 1344 (3d ed.).

It is unclear why ZTE Corp. declined to file a conventional motion to dismiss.  But if

ZTE Corp. intends to defend this case on the merits after its motion is denied, American Patents

does not object to setting ZTE's default aside—as was made clear to ZTE Corp. before it filed

this motion.  To the extent, however, that ZTE Corp. intends for its putative special appearance

to assist it in attacking a judgment in this case collaterally or otherwise to avoid defending on the

merits, it has not shown (and cannot show) good cause for the Court to lift the default.

As to ZTE Corp.'s motion to dismiss under Federal Rule of Civil Procedure 12(b)(5), the

motion should be denied because ZTE Corp. was properly served within the United States.  ZTE

Corp., a nonresident of Texas, does business in Texas but does not maintain a Texas registered

agent, and this lawsuit arises out of the business done in Texas.  Accordingly, American Patents

LLC ("American Patents") properly served ZTE Corp. on September 27, 2018 by substituted

service on the Secretary of State of Texas.  And because the Texas Secretary of State is an agent

for receiving service on behalf of ZTE Corp., service was completed in the United States; the Hague convention simply does not apply.

ZTE Corp.'s motion to dismiss under Rule 12(b)(6), which largely mirrors that of its subsidiary, ZTE (TX) (*see* Dkt. 19), also fails.  First, ZTE Corp.'s denials of the complaint's factual allegations are irrelevant, and its attempt to introduce evidence outside the pleadings is improper.  Second, the complaint pleads facts about ZTE Corp.'s liability that easily surpass the pleading standard for a plausible claim of direct and indirect patent infringement.

## II.    BACKGROUND

### A.    ZTE Corp. Is Doing Business In Texas

Although it does not maintain a registered agent in Texas, *see* Mot. at 3 (citing Dkt. 24-1 (Hu Decl.) at ¶ 8),[1] ZTE Corp. is doing business in this State.

The complaint alleges—and the available evidence confirms—that ZTE Corp. imports its products into the United States and specifically into Texas.  *See, e.g.*, Dkt. 1 at ¶ 8.  ZTE Corp., which is organized under the laws of China, concedes that it manufactures products in China and then transfers title of the products to ZTE USA in Hong Kong.  Hu Decl. ¶¶ 6, 15.  That is supported by import records showing that ZTE Corp. ships its products to ZTE USA in Richardson.  Ex. A [ZTE Import Records] (listing ZTE Corp. as Shipper and ZTE USA as Consignee).  ZTE Corp. also concedes that it established ZTE USA as a wholly owned subsidiary for the purpose of marketing, distributing, selling, installing, servicing, and supporting telecommunications equipment in the United States.  Hu Decl. at ¶ 18.  And ZTE Corp. concedes

---

[1] ZTE Corp. includes with its motion the declaration of Yi Hu (the "Hu Declaration"), a document prepared for purposes of litigation in a different case, *Seven Networks LLC v. ZTE Corp. et al.*, and signed a year before American Patents filed its complaint in this case.  It also includes the declaration of Chao (George) Shan (the "Shan Declaration"), which is dated September 25, 2017 and was also attached to ZTE (TX)'s motion to dismiss, *see* Dkt. 19.

that ZTE USA—a New Jersey corporation with a principal place of business in Richardson,

Texas—imports the products into the United States, and sells them nationwide.  *Id.* ¶¶ 16, 19.

Indeed, ZTE Corp. has expressly declared in prior sworn statements that "ZTE Corporation

invoices and ships equipment to ZTE USA which then handles delivery to ZTE USA's

customers."  Ex. B [ZTE Declaration in PTA-FLA case] at ¶ 18.  This contradictory evidence

calls into question ZTE Corp.'s claims that it has no involvement outside China and that it

maintains complete separation from ZTE USA.

Further, ZTE Corp. knows that its products are marketed and sold in the United States,

including Texas, *see* Hu Decl. ¶ 18, and has made admissions that confirm its extensive

operations in Texas specifically.  The ZTE Corp. Annual Report, for example, highlights that the

"Group's principal places of business overseas include the United States, Brazil and India."  Ex.

C [ZTE Annual Report] at 257.[2]  Its press releases state that it was ZTE Corp. which opened an

"LTE (Long Term Evolution) testing laboratory at its U.S. headquarters in Richardson, Texas,"

Ex. D [ZTE Opens LTE Laboratory in North America], and "its North American logistics center,

which is located in Dallas, U.S.A."  Ex. E [ZTE Launches North American Logistics Center].

The Dallas logistics center "is one of the most important hubs of ZTE's global distribution

network."  *Id.*  ZTE's website lists among its "Global sales outlets" an address in Richardson,

Texas—an address which is in the same building, but with a different suite number, from the one

used for ZTE USA.  *Compare* Ex. F [ZTE Global Sales Outlets] *with* Ex. G [ZTE USA –

Contact Us].  And many of its products, including the accused Axon products, are available for

sale at Best Buy in Texas.  Ex. H [Best Buy (Frisco) - Axon M].

---

[2] The Annual Report defines "Group" as "ZTE ***and*** one or more of its subsidiaries." Ex. C [ZTE
Annual Report] at 2 (emphasis added).

In addition, ZTE Corp. (*not* ZTE USA) is the applicant and grantee for required FCC

certifications of its products, including the accused Axon products.  Exs. I [FCC ID SRQ-Z999],

J [FCC ID SRQ-ZTEZ999]; K [Axon M Specifications]; *see also* Ex. L [ZTE Corporation FCC

ID Applications (SRQ)] (listing 57 pages of FCC ID applications by ZTE Corporation).

### B.     American Patents Files Its Complaint Against the ZTE Defendants and Effects Substitute Service on the Secretary of State of Texas

On September 24, 2018, American Patents filed a complaint alleging patent infringement

against ZTE Corp., ZTE USA, and ZTE (TX).  Dkt. 1.  The complaint contains over forty pages

of detailed factual allegations against the defendants.  American Patents served ZTE Corp. with a

summons and copy of the complaint by substituted service on the Secretary of State of Texas on

September 27, 2018.  Dkt. 18; *see also* Dkt. 21-1 (Pinckney Decl.) at ¶ 5.  On October 2, 2018,

the Secretary of State forwarded a copy of the summons and complaint to ZTE Corp. at the

address listed in its 2016 annual report from its website. Dkt. 21-1 at ¶ 6.

### C.     ZTE Corp.'s Counsel Immediately Initiates an Ongoing Dialog With American Patents' Counsel

Counsel for the ZTE defendants (including ZTE Corp.) contacted American Patents'

attorneys on September 28, 2018—the day after ZTE Corp. was served.  Ex. M [9/28/18 Taylor

Email].  In that email, ZTE Corp.'s counsel notified American Patents of two recent decisions

finding venue in this District improper as to ZTE USA, and requested that American Patents

dismiss this matter.  *Id.*  On October 2, in an effort to streamline the issues, American Patents

voluntarily dismissed ZTE USA from this suit as requested.  Dkt. 12; *see also* Ex. N [10/11/18

Email Chain] at 4 (10/2/18 Harrington Email).  On October 4, American Patents provided copies

of the proof of service as to ZTE Corp. to its counsel.  *Id.* at 2 (10/4/18 Harrington Email).  On

October 10, at ZTE Corp.'s request, American Patents explained its basis for service via the

Texas Secretary of State, *id.* at 1 (10/10/18 Harrington Email), and on October 11, ZTE Corp.

responded that it believed service on the Secretary of State was insufficient and that counsel was

"still not authorized to accept service on behalf of ZTE Corp.," *id.* (10/11/18 Taylor Email).

### D.      ZTE Corp. Elects Not to Respond to the Complaint Before the Deadline

Despite this ongoing dialog between the parties' counsel and clear knowledge of the

complaint, ZTE Corp. failed to file a responsive pleading by the October 18, 2018 deadline.  On

October 22, counsel for American Patents reached out and inquired whether ZTE Corp.'s failure

was an intentional default or an unintentional missed deadline.  Ex. O [11/6/18 Email Chain] at

3-4 (10/22/18 Harrington Email).  (American Patents would have been happy to agree to an

extension to respond to the complaint—as it has regularly done with other defendants—had ZTE

Corp. wanted one.)  In response, ZTE Corp. took the position that it had no obligation to respond

to the complaint at all.  *Id.* at 3 (10/23/18 Taylor Email).  Because ZTE Corp. made clear that it

had no intention of responding to the complaint, American Patents was forced to move for

default, and the clerk entered default on October 25.  Dkt. 22.

American Patents' counsel again reached out to ZTE Corp.'s counsel after the entry of

default, and inquired whether ZTE Corp. intended to respond to the complaint before American

Patents moved for a default judgment.  Ex. O [11/6/18 Email Chain] at 3 (10/26/18 Harrington

Email).  Again, ZTE Corp.'s stance was that it need not respond to the complaint.  *Id.* at 2

(10/26/18 Upshaw Email).  In a further effort to extend every possible opportunity to respond,

American Patents ***yet again*** told ZTE Corp. that American Patents would join a motion to

withdraw the entry of default if ZTE Corp. wished to file a responsive motion, and that it would

agree to an extension until November 2 for ZTE Corp. to do so.  *Id.* (10/26/18 Harrington

Email).  On November 6, ZTE Corp. requested an additional day to "answer / otherwise

respond"; again, American Patents agreed to this extension.  *Id.* at 1 (11/6/18 Taylor &
Harrington Emails).  The next day, November 7, 2018, ZTE Corp. filed this Motion, in which it
asserts a "special limited appearance," moves to quash service and dismiss the complaint against
ZTE Corp. pursuant to Rule 12(b)(5), set aside the default, and, in the alternative, dismiss for
failure to state a claim pursuant to Rule 12(b)(6).  Dkt. 24.

## III.    ARGUMENT

### A.    ZTE Corp.'s "Special Limited Appearance" Has No Legal Significance

ZTE Corp. asserts in a single sentence that it "specially appears in this action for the sole
purpose of setting aside the Clerk's Entry of Default and filing this Motion, and does not hereby
waive its defenses of improper service of process."  Mot. at 1.  It is not entirely clear what ZTE
is trying to accomplish with this statement.  With the enactment of the Federal Rules of Civil
Procedure eight decades ago, "it is no longer necessary to appear specially or employ any
particular set of words to challenge a federal court's personal jurisdiction, venue, or service of
process."  Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1344 (3d ed.).  By filing this motion,
ZTE Corp. is indicating its willingness to participate in this action subject to resolution of its
preliminary defenses raised herein.   So the "special appearance" language is superfluous and
should be disregarded.  *See id.* § 1344 ("There is, however, no penalty if the pleader, mindful of
the old ways, or practice in the forum state's courts, undertakes a 'general appearance' or a
'special appearance,' inasmuch as these labels have no legal significance.").

### B.    American Patents Is Willing to Agree to Lift the Default *if* ZTE Corp. Agrees to Participate on the Merits; Otherwise, There Is No Good Cause for Lifting the Entry of Default

In fact, so long as ZTE Corp.'s "special appearance" is nothing more than its
"mindful[ness] of the old ways," and it intends to participate in this litigation, American Patents

remains willing to agree to lift the default and proceed with the litigation.  American Patents

would strongly prefer to litigate this case on the merits—but to do that, ZTE Corp. must agree to

participate.

Unfortunately, given ZTE Corp.'s previous refusal of American Patents' offer to join a

motion to withdraw the default, American Patents is concerned that ZTE Corp. may believe its

"special appearance" somehow entitles it to reinstate its refusal to participate in this action

following resolution of this motion, or to take a second bite at the apple in the future (such as to

collaterally attack any judgment that may later issue).  If that is the case, then American Patents

cannot agree to lift the entry of default.

Nor, in that case, should the Court lift the default, because ZTE Corp. has not shown (and

cannot show) good cause for lifting the entry of default.  Courts generally look to: (1) whether a

defendant's default was willful, (2) whether setting it aside would prejudice the adversary, and

(3) whether a meritorious defense is presented.  *In re Dierschke*, 975 F.2d 181, 183 (5th Cir.

1992).  But these factors are "not talismanic," and "when the court finds an intentional failure of

responsive pleadings there need be no other finding."  *Id.* at 184.

ZTE Corp.'s failure to respond to the complaint was indisputably willful.  In the Fifth

Circuit, a defendant's failure to respond to a complaint is deemed willful when the defendant had

knowledge of the complaint but elected not to file a responsive pleading or motion.  *Hargray v.*

*City of New Orleans*, 12 F.3d 1099 (5th Cir. 1993) (per curiam).  Here, ZTE Corp. had

knowledge of the suit at least as of September 28, 2018, when its counsel affirmatively contacted

American Patents' counsel about this suit.  Ex. M [9/28/18 Taylor Email].  American Patents

provided counsel with the proof of service of ZTE Corp. on October 4, 2018, and that same day,

counsel confirmed receipt of the proof of service and made clear that it believed service was not

proper.  Ex. N [10/11/18 Email Chain] at 2.  When American Patents explained its basis for effecting substituted service, ZTE Corp. again reiterated its belief that service was not proper. Ex. N [10/11/18 Email Chain] at 1.  This entire exchange took place well before the October 18 deadline to respond to the complaint.  ZTE Corp. cannot deny its knowledge of the complaint. And rather than follow the proper course of seeking relief from the Court, it simply chose to do nothing.  *See* Ex. O [11/6/18 Email Chain] at 3.  This alone is sufficient grounds for denying ZTE Corp.'s request to set aside the default.  *Hargray*, 12 F.3d at 1099.

Perhaps realizing this, ZTE Corp. attempts to sidestep.  First, it argues that it was not properly served.  Mot. at 6.  As explained below in Part C, this is incorrect.  Second, ZTE Corp. argues that it did not receive "fair notice of the claims or a reasonable time to answer or otherwise plead."  Mot. at 6.  This is demonstrably false.  As shown in the extensive email communication described above, ZTE Corp.'s counsel contacted American Patents almost immediately after it was served; it was provided with a copy of the proof of service just a few days later; and rather than contest service in this Court, it affirmatively decided not to respond to the complaint.  And even when American Patents asked whether ZTE Corp. needed an extension of time to respond, ZTE Corp. simply stuck to its position that it need not participate in this litigation at all.[3]  This was not an excusable or unintentional failure to respond to the complaint; it was a tactical maneuver designed to avoid litigating this case on its merits.

And setting aside the default would be prejudicial to American Patents.  This is a multi-defendant suit, and if ZTE Corp. does not intend to participate on the merits, then the case needs

---

[3] ZTE Corp. complains that substituted service on the Secretary of State was "calculated to provide ZTE Corp. far less time to respond to a complaint than the 21 days required by FRCP 12(a)."  Mot. at 6.  Nothing could be further from the truth.  American Patents told ZTE Corp. that it could have a 30-day extension; ZTE Corp. refused to take American Patents up on its offer.

to move along as to the remaining defendant, ZTE (TX).  Maintaining the default as to ZTE

Corp. would permit that to happen.  And, as addressed below, American Patents' complaint

states a claim for patent infringement against ZTE Corp.  Finally, ZTE Corp. has not presented

any meritorious defense—it merely states without explanation that it "anticipates raising

additional defenses of invalidity and non-infringement."  Mot. at 7.  In sum, there is no good

cause to excuse ZTE Corp. from the consequences of its miscalculated litigation strategy.  *See In

re Dierschke*, 975 F.2d at 183.[4]

### C.   Substituted Service on the Texas Secretary of State Constituted Proper Service on ZTE Corp.

ZTE Corp. requests that the Court quash service of the summons and dismiss the

complaint pursuant to Rule 12(b)(5).  The request is without merit because American Patents

properly served ZTE Corp. by substituted service on the Texas Secretary of State.

### 1.   *Texas Law Provides For Substitute Service In The Circumstances Here*

Service on business entities, including "domestic or foreign corporation[s]," is governed

by Rule 4(h).  Rule 4(h) has two subparts: part (1) applies to service "in a judicial district of the

United States," and part (2) applies to service "at a place not within any judicial district of the

United States[.]"  Because American Patents served ZTE Corp. within the United States, the

issue is whether service was proper under Rule 4(h)(1).[5]  Under Rule 4(h)(1)(A), when serving a

---

[4] Of course, as discussed *supra*, American Patents would gladly agree to lift the default if only ZTE Corp. would agree to participate in this litigation.  *Cf. Blue Spike, LLC v. ASUS Computer International, Inc.*, No. 6:16-cv-1384-RWS-KNM, 2018 WL 3301705, at *14 (E.D. Tex. Feb. 20, 2018) (noting, in declining to enter default judgment, that "[t]he most important discretionary factor that the Court considers is the fact that ASUS has repeatedly represented that it is ready and willing to litigate the case on its merits. ASUS [a U.S. subsidiary] has even offered to negotiate a waiver of service as to ASUSTeK [a Taiwanese corporation] if default is removed so that the parties can begin litigating the merits of the case . . . .").

[5] In its motion, ZTE Corp. focuses only on Rule 4(h)(2).  It does not even acknowledge that there are two prongs to Rule 4(h), or that its analysis is based on only the second prong.  Despite being

foreign corporation, service may be made in a judicial district of the United States "in the

manner prescribed by Rule 4(e)(1) for serving an individual."  In turn, Rule 4(e)(1) provides for

service by "following state law for serving a summons in an action brought in courts of general

jurisdiction in the state where the district court is located or where service is made."

> The laws of Texas provide for substituted service on the Secretary of State:

> The secretary of state is an agent for service of process on a nonresident who
> engages in business in this state, but does not maintain a regular place of business
> in this state or a designated agent for service of process, in any proceeding that
> arises out of the business done in this state and to which the nonresident is a party.

Tex. Civ. Prac. & Rem. Code § 17.044(b).  Because the Secretary of State serves as an

involuntary domestic agent for service of process, service is complete in the United States upon

delivery of the summons and complaint to the Secretary of State.  *See Bonewitz v. Bonewitz*, 726

S.W.2d 227, 230 (Tex. Ct. App. 1987) (holding that service occurs on the day that the secretary

of state is served as agent, not on the date defendant receives a copy of the forwarded papers);

*see also Campus Invs. v. Cullever*, 144 S.W.3d 464, 466 (Tex. 2004) (Secretary of State is an

agent for receiving process on the defendant's behalf).

> In turn, the Texas long-arm statute defines what it means to do business in this State:

> In addition to other acts that may constitute doing business, a nonresident does
> business in this state if the nonresident:
>     (1) contracts by mail or otherwise with a Texas resident and either party is
>         to perform the contract in whole or in part in this state;
>     (2) commits a tort in whole or in part in this state; or
>     (3) recruits Texas residents, directly or through an intermediary located in
>         this state, for employment inside or outside this state.

*Id.* § 17.042; *see also Ashley v. Hawkins*, 239 S.W.3d 175, 178 (Tex. 2009) ("Under the general

longarm statute, a nonresident party is amenable to service through the Secretary of State, if he

---

on notice of the basis for American Patents' service on the Secretary of State (*see* Ex. N
[10/11/18 Email Chain] at 1), ZTE Corp.'s brief sidesteps the issue entirely.

or she 'engages in business in this state' and the proceeding at issue 'arises out of the business done in this state and to which the nonresident is a party. A nonresident defendant engages in business in this state, 'if, among other acts . . . the nonresident *commits a tort in whole or in part in this state*.'" (internal citations omitted) (citing *Kerlin v. Sauceda*, 263 F.W.3d 920, 927 (Tex. 2008))).

These conditions are satisfied in this case. ZTE Corp. does not maintain a designated agent for service of process in Texas.  Hu Decl. ¶¶ 8-9.  And ZTE Corp. does business in Texas under the meaning of § 17.042(2), because its acts of patent infringement in this State are a tort committed in whole or in part in this state.  *See, e.g.*, Dkt. 1 at ¶¶ 8-9, 21-23; *ATEN Intern. Co. Ltd. v. Emine Tech. Co., Ltd.*, 261 F.R.D. 112, 121 (E.D. Tex. 2009) ("Since patent infringement is a tort, the sale of [a defendant's] infringing products in Texas is sufficient evidence that [the defendant] was 'doing business' under the Texas service statute, and thus sufficient evidence to meet the service provisions of Federal Rule of Civil Procedure 4(h)(1)(A).") (denying a Taiwanese defendant's motion to dismiss for improper service, where the patentee alleged acts of infringement in Texas).

In addition, and alternatively, ZTE Corp. does business in Texas under § 17.042(1) via its contractual relationships with at least ZTE USA, ZTE (TX), and/or customers or end-users of its products who reside in Texas.  For example, ZTE (TX) is undisputedly a resident of the State of Texas.  Dkt. 1 at ¶ 3; *see also* Dkt. 19 at 2 (ZTE (TX)'s motion to dismiss for improper venue).[6] ZTE Corp. is the sole customer of ZTE (TX).  Shan Decl. ¶ 5.  ZTE (TX) performs research and

---

[6] ZTE (TX) is incorporated in Texas.  Dkt. 1 at ¶ 3.  Though ZTE (TX) disputes whether it resides in the Eastern District of Texas, it does not dispute that it resides somewhere in this State. *See* Dkt. 19; *see also TC Heartland LLC v. Kraft Foods Grp. Grands LLC*, 137 S. Ct. 1514, 1521 (2017).

development activities and provides technical marketing support for ZTE Corporation, including as to the accused products, at least some of which is performed in Texas.  Shan Decl. ¶¶ 4, 12, 15; *see also id.* ¶¶ 13-14 (ZTE (TX) has an office in Austin, Texas, and several employees living in Plano and Allen, Texas).  *See also, e.g.*, Dkt. 1 at ¶¶ 8-9, 21-23, 124-25 (describing infringing activities of ZTE Corp. in Texas including in relation to customers and end-users); Hu Decl. at ¶¶ 15-16, 19 (describing contractual relationship between ZTE Corp. and ZTE USA, a corporation with its principal place of business in Richardson, Texas); Ex. A [ZTE Import Records] (showing shipments from ZTE Corp. to ZTE USA in Richardson, Texas); Ex. B [ZTE Declaration in PTA-FLA case] at ¶ 18; Ex. H [Best Buy (Frisco) – Axon M] (showing ZTE products for sale in Texas).  Accordingly, ZTE Corp. contracts with one or more Texas residents concerning the accused products and acts accused of infringement, and the contracts are performed in whole or in part in this state.  Under either § 17.042(1) or (2), ZTE Corp. does business here, and substituted service on the Secretary of State was proper.

ZTE Corp.'s argument, which addresses service abroad pursuant to Rule 4(h)(2), is inapposite.  The cases it cites do not address Rule 4(h)(1) or substituted service on the Secretary of State.  *See Blue Spike, LLC v. ASUS Comp. Intl.*, No. 6:16-cv-1384-RWS-KNM, 2018 WL 3301705, at *3 (E.D. Tex. Feb. 20, 2018) (finding that service of foreign parent corporation by serving its U.S. subsidiary was not effective because plaintiff did not show that U.S. subsidiary was authorized agent for service or alter ego of foreign parent); *Fujitsu, Ltd. v. Belkin Intl., Inc.*, 782 F. Supp. 2d 868, 874 n.5 (N.D. Cal. 2011) (finding, pursuant to Rule 4(h)(2) and 4(f)(2)(A), that Taiwanese attorney's hand delivery of complaint and summons to foreign defendants' headquarters in Taiwan did not comply with Taiwanese law).  Nor does *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 706 (1988), help ZTE Corp.  That case held the law

of the forum state authorized the plaintiff to serve a foreign corporation by substituted service on its domestic subsidiary, without sending documents abroad.  Because service was complete in the U.S. (just as it was here upon service on the Secretary of State) the Hague Convention ***did not*** apply.  *Id.* at 707 ("Where service on a domestic agent is valid and complete under both state law and the Due Process Clause, our inquiry ends and the Convention has no further implications.").

2.   ***In the Alternative, American Patents Requests that the Court Permit Service by Alternate Means and/or Discovery Concerning ZTE Corp.'s Relationships with Its U.S. Subsidiaries***

The Court should deny ZTE Corp.'s Rule 12(b)(5) motion, but, if the Court determines that service on the Secretary of State was not proper, then it should allow service by alternative means rather than dismiss the complaint.  "Generally, dismissal of a complaint is inappropriate when there is a reasonable prospect that service may be properly effectuated." *Blue Spike, LLC*, 2018 WL 3301705, at *8.  Service may be made domestically via alternate means of service on ZTE Corp.'s U.S. counsel, and American Patents hereby requests permission in the alternative to serve ZTE Corp. in this manner if necessary.  *See* Rule 4(f)(3).  This would be particularly appropriate here, where ZTE Corp. has already been in extensive contact with American Patents through ZTE Corp.'s U.S.-based counsel regarding this dispute.  *See Juicero, Inc. v. iTaste Co.*, 2017 WL 3996196, at *2-3 (N.D. Cal. 2017) (finding that alternate service on Chinese defendant company by email, Facebook, and upon defendant's counsel comported with due process and was not prohibited by the Hague Convention or China's objections to certain Hague Convention articles, particularly when defendant had already been in contact with plaintiff via defendant's U.S. counsel); *see also X-Mobile Techs. LLC v. Lenovo Grp., Ltd.*, No. 4:17-cv-700, Dkt. 12

(E.D. Tex. Nov. 14, 2017) (granting request for alternate service via email, Facebook, and U.S. counsel).

As another alternative, the available evidence suggests that ZTE USA and/or ZTE (TX) may be an alter ego of ZTE Corp., which would make one or more of those domestic subsidiaries an involuntary agent for service on ZTE Corp.[7]  In that event, the Court should permit American Patents to conduct discovery into the relationship between these entities—including the nature and scope of each entity's contractual relationship and duties with one another, and the relationship between ZTE Corp. and employees or other personnel in Texas and what role ZTE Corp. plays in hiring personnel in the U.S.—to determine whether ZTE Corp. may be served via service on its domestic subsidiary ZTE USA.  *See Lisson v. ING GROEP N.V.*, 262 Fed. Appx. 567, 570-71 (5th Cir. 2007).   To the extent not sufficiently shown above, discovery could also provide additional evidence that ZTE is doing business in Texas, including by hiring Texas residents directly or through intermediaries such as its subsidiaries incorporated or headquartered in Texas.

Finally, ZTE Corp. concedes that service could be effectuated through the Hague Convention.  Because at least three potential alternative methods exist to serve ZTE Corp., it would be inappropriate to dismiss the complaint.

**D.    The Complaint States a Claim for Infringement Against ZTE Corp.**

---

[7] In addition to the evidence described *supra* Part II.A, ZTE Corp. itself has expressed concern in internal reports about "additional legal risk" stemming from the presence of its high-level managers on the board of directors of its main U.S. subsidiary.  Ex. P [U.S. Gov't Proposed Charging Letter to ZTE Corp.] at ¶ 47, *available at* https://www.bis.doc.gov/index.php/forms-documents/regulations-docs/federal-register-notices/federal-register-2018/2234-superseding-settlement-agreement-6-11-18-final/file.

Much of ZTE Corp.'s Rule 12(b)(6) motion is nearly identical to the Rule 12(b)(6) motion filed by its subsidiary, ZTE (TX).  *See* Mot. at 7-10; *compare* Dkt. 19 at 5-7.  First, ZTE Corp. denies the complaint's factual allegations of infringement.  And second, although ZTE Corp. has elaborated somewhat from ZTE (TX)'s motion in regard to the complaint's indirect infringement allegations, its core argument remains the same: that the complaint does not plead direct and indirect infringement because it alleges conduct by "Defendants" or "ZTE" collectively.  The Court should deny this motion for largely the same reasons it should deny ZTE (TX)'s Rule 12(b)(6) motion to dismiss.

1. ***ZTE Corp.'s Factual Denials Are Irrelevant to Its Rule 12(b)(6) Motion to Dismiss***

ZTE Corp.'s attempt to challenge the complaint's factual allegations via a Rule 12(b)(6) motion, and its reliance on the Hu Declaration, are improper for the same reasons outlined in American Patents' opposition to ZTE (TX)'s nearly identical motion.  *See* Dkt. 23 at pp. 6-7, which American Patents hereby incorporates by reference.

2. ***The Complaint Properly Alleges Infringement by ZTE Corp.***

ZTE Corp.'s remaining arguments may be broken down into three segments.  First, relying on *M2M Solutions LLC v. Telit Communications PLC*, No. 14-cv-1103-RGA, 2015 WL 4640400 (D. Del. Aug. 5, 2015), it rehashes its assertion that the complaint pleads as to all defendants collectively and argues that it "deliberately tries to obscure 'who performed the allegedly infringing act[s].'"  This issue permeates its arguments regarding direct, induced, and contributory infringement.  Second, ZTE Corp. appears to argue that the complaint does not plead all elements of induced and contributory infringement.[8]  Third, ZTE Corp. asserts that

---

[8] Relatedly, ZTE Corp. notes that Form 18 was abrogated in 2015.  Mot. at 8 n.1.  While that is true, the Federal Circuit recently noted that it has never recognized a distinction between the

American Patents' dismissal of ZTE USA (which was done at ZTE's request) somehow "makes it more important for ZTE Corp. and the Court to know whether a defendant remaining in this case or a third party is the alleged direct infringer, or the alleged indirect or contributory infringer."  None of these arguments have merit.

a.     <strong><u>The Complaint Is Not Defective Based On Pleading As To<br>Defendants Collectively</u></strong>

As explained in American Patents' opposition to ZTE (TX), *M2M Solutions* is inapposite. *See* Dkt. 23 at 7-9, incorporated herein.  In *M2M Solutions*, the plaintiff asserted liability of a foreign parent based solely on the parent-subsidiary relationship—the parent company itself did not engage in infringing activities.  Here, by contrast, American Patents alleges that ***all*** defendants are engaged in infringing conduct, and that each defendant is responsible for its own infringement.  The complaint states this clearly by alleging that Defendants (*i.e.*, ZTE Corp., ZTE (USA),[9] and ZTE (TX), *see* Dkt. 1 at introductory paragraph) have each infringed the asserted patents by making, using, selling, and/or offering to sell the accused products.  *E.g.*, Dkt. 1 at ¶ 47.  *See Acantha LLC v. Depuy Synthes Sales, Inc.*, No. 15-cv-1257, 2016 WL 8201781, at *2 (E.D. Wis. July 28, 2016) (distinguishing *M2M Solutions* on this ground); *see also MGT Gaming, Inc. v. WMS Gaming, Inc.*, 978 F. Supp. 2d 647, 655 (S.D. Miss. 2013) (rejecting argument that "lump[ing] all Defendants and accused gaming machines together" did not provide sufficient notice and instead finding that, by identifying specific products rather than generalized description, pleadings had exceeded Form 18 standard).

---

requirements of Form 18 and the *Iqbal / Twombly* pleading standard.  *Lifetime Industries, Inc. v. Trim-Lok, Inc.*, 860 F.3d 1372, 1377 (Fed. Cir. 2017).

[9] American Patents dismissed ZTE (USA) from the suit before ZTE Corp. filed this motion.  Dkt. 12.

ZTE Corp. also suggests that *Lifetime Industries, Inc. v. Trim-Lok, Inc.*, 860 F.3d 1372, 1379 (Fed. Cir. 2017), stands for the point that pleading as to multiple defendants collectively is impermissible. *See* Mot. at 9. ZTE Corp.'s reliance on this case is surprising given that the Federal Circuit *reversed* the district court's dismissal and held that direct and indirect infringement were properly pleaded, all while emphasizing repeatedly that the defendant's attacks on the complaint demanded too much detail. *See Lifetime Indus.*, 869 F.3d at 1379 ("[Defendant's] complaints concerning lack of detail ask for too much. There is no requirement for [Plaintiff] to prove its case at the pleading stage." (internal quotations omitted)); *id.* at 1380 ("[Defendant's] responses again ask too much."). But more importantly, its reliance is misplaced. The *Lifetime Industries* decision, involving a single defendant, does not address multiple-defendant pleadings at all. The paragraph from which ZTE Corp. quotes is merely a recitation of some of the factual allegations in that specific case, and not in any way a statement of requirements for pleading direct infringement. *See Lifetime Indus.*, 869 F.3d at 1379. In fact, the court expressly limited its holding to concluding that the plaintiff had sufficiently alleged the defendant created an infringing combination on a single occasion. *Id.* The opinion explicitly "*do[es] not* express any other opinion relating to the level of detail contained" in the plaintiff's complaint. *Id.* (emphasis added).

### b.     The Complaint Pleads A Plausible Claim For Direct, Indirect, and Contributory Infringement by ZTE Corp.

Next, ZTE Corp. appears to argue that the complaint has not pleaded all elements of direct and indirect infringement. It is mistaken.

**Direct Infringement**. As explained in American Patents' opposition to ZTE (TX)'s motion, and incorporated by reference herein, the complaint easily exceeds the pleading standard for direct infringement. *See* Dkt. 23 at 7-9 and citations therein.

19

**Induced Infringement**.  ZTE Corp. asserts that the "complaint make[s] no allegation that ZTE Corp. specifically intended anyone to infringe."  Mot. at 9-10.  But the complaint contains this exact language:  "ZTE took active steps, directly and/or through contractual relationships with others, with the specific intent to cause them to use the accused products in a manner than infringes one or more claims of the patents-in-suit . . . ." Dkt. 1 at ¶ 124.  And the complaint elaborates as to what the active steps are alleged to be.  *Id.* ("Such steps by ZTE included, among other things, advising or directing customers and end-users to use the accused products in an infringing manner; advertising and promoting the use of the accused products in an infringing manner; and/or distributing instructions that guide users to use the accused products in an infringing manner.").

Further, American Patents alleges that ZTE Corp. has induced infringement by "importing, selling or offering to sell the accused products," and that "ZTE took active steps, directly and/or through contractual relationships with others, with the specific intent to cause such persons to import, sell, or offer to sell the accused products in a manner that infringes one or more claims of the patents-in-suit[.]"  *Id.* ¶ 125.  And the complaint provides additional detail: "Such steps by ZTE included, among other things, making or selling the accused products outside of the United States for importation into or sale in the United States, or knowing that such importation or sale would occur; and directing, facilitating, or influencing its affiliates, or third-party manufacturers, shippers, distributors, retailers, or other persons acting on its or their behalf, to import, sell, or offer to sell the accused products in an infringing manner. . . . ZTE performed such steps in order to profit from the eventual sale of the accused products in the United States."  *Id.*  The complaint alleges knowledge of the patents-in-suit and knowledge that the induced acts constitute infringement.  *Id.* ¶¶ 124, 125.  This is more than sufficient to allege

induced infringement by ZTE Corp.[10]   *See, e.g.*, *Lifetime Indus.*, 869 F.3d at1380 (holding that plaintiff pleaded claim for induced infringement when it alleged knowledge of the patent and intent to infringe).

**Contributory Infringement.**  ZTE Corp. asserts the complaint does not identify any "component of a patented machine" and "makes the vague allegation that the accused products have 'special features' but fails to allege who supplied which components that continue [*sic*] any such special feature into the U.S."  Mot. at 10.  But the complaint contains the allegations that ZTE Corp. claims are missing:  "The accused products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe the [patents-in-suit]," Dkt. 1 at ¶ 126; and "The special features include improved wireless communication capabilities, initiation and/or control of Internet streamed content, and advanced keyboard layout capabilities in a manner that infringes the [patents-in-suit]," *id*.  The components and special features are supplied, as alleged, by the ZTE defendants—including ZTE Corp.  *Id*.  And, the complaint alleges that ZTE Corp. had knowledge of the patent and knowledge that its activities cause infringement.  *Id*. ¶¶ 124-25.  Again, the complaint's allegations easily meet the requirement to plead a plausible claim for contributory infringement. *See Lifetime Indus.*, 869 F.3d at 1381.

### c.    ZTE USA's Dismissal Is Irrelevant

---

[10] As with ZTE (TX)'s Rule 12(b)(6) motion to dismiss, here again, ZTE Corp.'s own Hu Declaration appears to **support** these allegations.  *See, e.g.*, Hu Decl. at ¶¶ 15 ("ZTE Corporation manufactures products in the People's Republic of China and transfers title to the products to ZTE (USA) Inc. in Hong Kong."), 16 ("ZTE (USA) Inc. then imports the products into the United States.  I understand that ZTE (USA) Inc. handles the United States sale and distribution of the Accused Products."), 18 ("In 1998, ZTE Corporation established ZTE (USA) Inc. as a wholly owned-subsidiary for the purpose of marketing, distributing, selling, installing servicing, and supporting telecommunications equipment in the United States.").

Finally, ZTE Corp. asserts that American Patents' dismissal of ZTE USA (which was done at ZTE's own request) "makes it more important for ZTE Corp. and the Court to know whether a defendant remaining in this case or a third party is the alleged direct infringer, or the alleged indirect or contributory infringer." Mot. at 10. But the dismissal of ZTE (USA) has no bearing on the sufficiency of the pleadings as to ZTE Corp., and ZTE Corp. fails to explain why it believes otherwise.

As explained exhaustively above and in the complaint's forty-plus pages of factual allegations, ZTE Corp. is an alleged direct infringer, an alleged indirect infringer, and an alleged contributory infringer. And ZTE (TX) is also an alleged direct infringer, an alleged indirect infringer, and an alleged contributory infringer. As the Federal Circuit underscored in *Lifetime Industries*, the Federal Rules permit a party to plead in the alternative. 869 F.3d at 1381. On information and belief, the acts pleaded in the complaint are done by *someone*, and the plausible actors are ZTE Corp., ZTE (TX), and/or ZTE USA. If ZTE Corp. performs acts that amount to direct infringement, it may be liable for direct infringement; if ZTE USA performs some steps while ZTE Corp. does others, ZTE Corp. may be liable for indirect infringement. ZTE USA need not be a party to the suit for this to be true. Discovery will clarify what role ZTE Corp. plays; all that is required now is that American Patents has pleaded a plausible claim for direct and indirect infringement by ZTE Corp. *See id.* ("[T]he [infringing] seal discovered by [Plaintiff's employee] was installed on the Forest River RV by *someone*, and the two plausible installers are either [Defendant's] employees or [a third party's employees]. If it was [Defendant's] employees, then [Defendant] may be liable for direct infringement; if it was [the third party's] employees, then [Defendant] may be liable for indirect infringement. Thus, a more developed record will clarify what role, if any, [Defendant's] employees had in the installation of

the seal at the Forest River plant.  At present, [Plaintiff] has adequately pleaded both direct and indirect infringement.") (reversing district court's dismissal).

## IV.  CONCLUSION

For the foregoing reasons, the Court should deny ZTE Corp.'s Rule 12(b)(5) motion to dismiss the complaint and quash service of process, deny its motion to set aside the default (unless ZTE Corp. is willing to participate in this litigation on the merits), and deny ZTE Corp.'s Rule 12(b)(6) motion to dismiss for failure to state a claim.  In the event the Court finds the complaint deficient in any way, American Patents respectfully requests leave to amend the complaint.

Dated: November 26, 2018                    Respectfully submitted,

/s/ *Larry D. Thompson, Jr.*
Matthew J. Antonelli
Texas Bar No. 24068432
matt@ahtlawfirm.com
Zachariah S. Harrington
Texas Bar No. 24057886
zac@ahtlawfirm.com
Larry D. Thompson, Jr.
Texas Bar No. 24051428
larry@ahtlawfirm.com
Christopher Ryan Pinckney
Texas Bar No. 24067819
ryan@ahtlawfirm.com
Michael D. Ellis
Texas Bar No. 24081586
michael@ahtlawfirm.com

ANTONELLI, HARRINGTON
& THOMPSON LLP
4306 Yoakum Blvd., Ste. 450
Houston, TX 77006
(713) 581-3000

Stafford Davis
State Bar No. 24054605
sdavis@stafforddavisfirm.com

Catherine Bartles
Texas Bar No. 24104849
cbartles@stafforddavisfirm.com
THE STAFFORD DAVIS FIRM
The People's Petroleum Building
102 North College Avenue, 13th Floor
Tyler, Texas 75702
(903) 593-7000
(903) 705-7369 fax

*Attorneys for American Patents LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of November 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Larry D. Thompson, Jr.*
Larry D. Thompson, Jr.